## HIMSTEDT v. GERMAN BANK.

| 46 | 537 |
| 187 | 423 |

1. BANKS: *Relations between, and depositors.*

  The relation between a bank and a general depositor is not that of bailor and bailee, but of creditor and debtor, the bank becoming the owner of the deposit and debtor for repayment of it, or any part of it, to the depositor upon demand.

2. SAME: *Garnishment of. Parties.*

  Where there is a general deposit of money in bank by a wife, as her own, the bank becomes her debtor for the amount of the deposit, and not the debtor or bailee of the husband, and cannot be garnished by the attaching creditor of her husband upon the ground that the money was his, fraudulently transferred to her. The remedy is in equity, in which the husband and wife and bank are, all, necessary parties.

APPEAL from *Pulaski* Circuit Court.

Hon F. T. VAUGHAN, Circuit Judge.

*T. J. Oliphint*, for appellant.

The proof shows conclusively that the money belonged to the husband, and known so to be by the garnishee, according to all legal requirements of notice. It was the bank's duty to hold the amount to abide the litigation they knew was progressing. As to the sufficiency and effect of the notice, see *Wade on Notice*, secs. *11, 7, 10, 27, 28, 30, 89, 251, 672, 676, 681, 685, 7; 48 N. Y., 326.*

*U. M. & G. B. Rose*, for appellee.

The issue in this cause was whether the bank owed Frank Marko. The money was generally deposited by her, and the relation of debtor and creditor was created, not bailor and bailee, and the money could not be reached by a garnishment proceeding. Plaintiff's remedy was in equity.

A bank is bound to pay to a depositor, or his order, money deposited by him, and cannot refuse on the ground that it belongs to another. *42 Ark., 62.*

The payment to Mrs. Marko is expressly enjoined by sec. *4627, Mansf. Dig.*

There was no actual notice to the bank. The mere social chat or conversation with Thompson was not legal notice; it was not addressed to him as an officer of the bank, but as an individual. *Morse on Banks, etc., 2d ed., 125, 130; 6 Southern Law Rev., p. 5; 1 Hill, 578; 1 Metc., 308; 24 Barb., 313; 3 M. G. & S., 16; 1 Disn., 285; 9 Penn. St., 27; 3 Md., ch. 388.*

SMITH, J.   This is a continuation of the case of the *Bank v. Himstedt*, reported in *42 Ark., 62.* Himstedt had sued Frank Marko and Elizabeth, his wife, for a debt due by the hus-

band; had taken out an attachment and summoned the bank as a garnishee. The answer denied any indebtedness to Frank Marko, but disclosed that the bank held $75, which had been deposited by Elizabeth in her own name. The plaintiff discontinued his action against the wife, and the bank honored her check for the amount standing to her credit. Judgment having been rendered against the defendant and the attachment having been sustained, the garnishee was ordered to pay into court a sufficient sum to cover the plaintiff's debt and cost of suit. But on appeal this last mentioned order was reversed.

Upon the second trial the evidence showed that Frank Marko, being indebted to Himstedt in a small sum, had sold his real estate in Little Rock and, by his direction, the purchase money had been paid to his wife, who deposited it in the bank. An attempt was also made to show that the bank had actual notice that the money deposited in the name of Elizabeth Marko belonged to her husband.

On this branch of the case the finding of the court below correctly summarizes the evidence, thus:

"On the morning of the day on which the attachment was issued the plaintiff saw A. J. Thompson, who was the collector of the bank, and a director in it, and a member of the discount board, passing in front of his store. At the time Thompson was not engaged in the business of the bank, but was merely passing casually on the way to his dinner. The plaintiff and Thompson were acquainted with each other, and a conversation took place between them. The plaintiff told Thompson that Marko was trying to beat him out of his debt, and was about to leave town, and that the money in bank belonged to him and not to his wife.

"Himstedt did not tell Thompson that he asserted any claim to the money, nor did he direct Thompson to hold

the money as the money of Marko. Thompson under-stood the conversation as only a friendly and social one, and did not understand that it was directed to him as an officer of the bank, or that he was expected to take any action, or refrain from taking any, in consequence of what Himstedt had said. He did not communicate the informa-tion which he had derived from Himstedt to the other officers of the bank, and never took any action in conse-quence of it."

The issue was whether or not the bank owed anything to Frank Marko. And as it had never had any dealings with him, and the deposit it held had never been adjudged to belong to him, and no appropriate proceeding, having that object in view, was then pending in any competent tribunal, with the necessary parties before it, the judgment was necessarily for the bank.

1. Relation between banks and depositors.

The attempt to reach this money by process of garnish-ment, indicates a misconception of the relation which ex-ists between a bank and its depositors. A general deposit is not a contract of bailment, in which the title to the thing deposited remains with the owner. But the title to money deposited passes to the bank, and the bank becomes debtor to the depositor. In consideraton of the loan of the money, and the right to use it for its own profit, the bank agrees to refund the same, or any part thereof, on demand. The nature of the relation created by the trans-action, as being that of debtor and creditor, and not bailor and bailee, was pointed out by this court as early as the case of *Dawson v. Real Estate Bank*, 5 *Ark.*, 296. And such is the law everywhere. *Foley v. Hill*, 2 *Clark & Fin-nelly*, 28 ; *Marine Bank v. Fulton Bank*, 2 *Wallace* 252 ; *Phœnix Bank v. Risley*, 111 *U. S.*, 125.

The debt which the bank owed was to Mrs. Marko, not to her husband. Marko may have given the money to

his wife, and his intention, in so giving it, may have been to defraud his creditors. But this would not alter the relation between the parties to the deposit, nor vary their rights and duties. The money, if not exempt by law, might, no doubt, have been subjected to the satisfaction of the plaintiff's demand by some proceeding, to which the debtor, his wife and the bank were parties. For instance, the plaintiff might have filed a bill in equity, setting up his claim and attachment, Marko's insolvency and contemplated removal from the state, and fraudulent purpose in causing the money to be paid to his wife. And he might have obtained an injunction restraining the bank from paying to Mrs. Marko, pending the suit, and at the final hearing, a decree that the money belonged to Marko, and should be applied for the benefit of the plaintiff. But the question whether the gift to the wife was fraudulent could not be tried in the garnishment proceeding. It did not concern the bank that Marko chose to sell his property and turn the proceeds over to his wife.

We have decided the case upon general principles of law, independently of the married woman's act.

But the payment to Mrs. Marko was authorized by *sec. 4627 of Mansfield's Digest*:

" When any deposit shall be made in any savings bank or other institution by any woman, being, or hereafter becoming, a married woman, in her own name, it shall be lawful for the officers or trustees of such bank or institution to pay such depositor such sum or sums as may be due such woman, and the receipt or acquittance of such depositor shall be sufficient legal discharge to the corporation thereof."

Judgment affirmed.