WATERS *v.* HANLEY.

Opinion delivered October 25, 1915.

1. HOMESTEAD—CONTRACT TO CONVEY—FAILURE OF WIFE TO SIGN.—A husband can not make a conveyance of the homestead without the concurrence of his wife, and he can not make a contract to convey it, which will be binding upon his wife.

2. HOMESTEAD—SALE OF BY HUSBAND—SIGNATURE OF WIFE.—W., a married man, contracted in writing with H. to sell him a piece of land on which a residence was located, and which was his homestead. W.'s wife did not join in the execution of the contract. Before the time for executing the deed the residence was destroyed by fire, *held,* W. did not have the ability to carry out the contract made by himself for the conveyance of his homestead, and the equitable title never passed to the vendee, and the case is not affected by the fact that the wife, after the fire, joined with her husband in the execution of a deed.

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; affirmed.

*A. J. Murphy* and *Moore, Smith & Moore,* for appellant.

1. The payment by appellee was voluntary with full knowledge of all the facts. He cannot recover, 49 Ark. 71; 72 *Id.* 555; 86 *Id.* 178; 95 *Id.* 501; 200 U. S. 492; 192 *Id.* 259; 35 Pac. 138; 173 N. Y. 55; 18 N. E. 488; 2 East. 469; 28 Pac. 1001; 47 Fed. 427; 5 Pac. 436. Having acted voluntarily with full knowledge, appellee cannot avail himself of the statutory limitation upon the right of appellant to sell the homestead without the joinder of the wife.

2. The statute does not apply to executory contracts for the sale of the homestead. 106 Ark. 253; 61 *Id.* 594-604; 76 *Id.* 534; 66 *Id.* 437; 28 So. 675; 75 *Id.* 141; 90 Id. 116;

85 *Id.* 289; 109 Am. St. Rep. 219; 91 N. W. 816; 64 S. W. 343; 19 N. W. 424; 57 Ark. 242, 87 *Id.* 227; 5 *Id.* 497; 187 Fed. 515.

3.   Under a contract for sale of land, the equitable ownership passes to the vendee and he is subject to all losses and depreciations.   59 Atl. 243; 38 L. R. A. (N. S.) 254; 27 *Id.* 233; 67 Ark. 553; 2 Hun 540; 187 Fed. 520; 5 Ark. 500.

*T. P. Farmer* and *C. Floyd Huff,* for appellee.

1.   This was a contract executed on the part of Hanley and executory on the part of Waters.   Waters was to convey and give possession of the lot *with all buildings thereon.*   The buildings were a material part of the purchase and having been destroyed without fault of Hanley, and Waters being unable to convey the property purchased, Hanley was entitled to recover.   *Tupy* v. *Kocounek,* 66 Ark. 433; 12 Ore. 488; 8 Pac. 544.

2.   The lot was a homestead and the sale was void without the joinder of the wife.   Kirby's Dig. § 3901; 57 Ark. 242; 67 Ark. 553, 561; 107 Mass. 514.

3.   Where a contract is made for future conveyance of land and buildings thereon, with no provision as to the contingency of the buildings being destroyed by fire before conveyance the loss by fire falls upon the vendor. 67 Ark. 553, 561; 107 Mass. 514; 105 Ark. 513; 63 Oh. St. 514; 33 L. R. A. 602; 38 *Id.* 760; 15 L. R. A. (N. S.) 833; 5 *Id.* 1105; 68 Am. Rep. 371; 82 Am. Dec. 349; 37 S. E. 13; 95 N. W. 90; 7 So. 198; 72 Am. Dec. 143; 12 Ark. 664, and numerous others.   See also 197 N. Y. 168; 90 N. E. 430; 18 Am. & E. Ann. Cas. 795; 27 L. R. A. (N. S.) 233; 31 Okla. 221; 120 Pac. 960; 43 L. R. A. (N. S.) 383; 73 S. E. 698; 80 N. E. 80; 225 Ill. 115; 50 L. R. A. 680; 9 A. & E. Ann. Cases, 1053, etc.

HART, J.   W. W. Waters and Thomas L. Hanley entered into an executory contract for the sale of certain property, as follows:

"Hot Springs, Ark., August 21, 1913.

"I have this day sold to Mr. Thomas Hanley my residence and lot with all buildings thereon, on Garden Street, in the City of Hot Springs, Ark., for the sum of six thousand five hundred dollars, cash in hand, to give possession on September 15, 1913,—all time after said date I am using said premises to pay $40 per month for same—all papers to be made by the 20th of September, 1913.                              W. W. WATERS."

At the time of the execution of the contract Hanley paid the purchase price of the property, which was $6500. On the 5th day of September, 1913, while Waters was still in possession of the property and before a deed to the same had been executed by him to Hanley, the house and improvements on the lots were burned without fault of either party. Hanley instituted this action in the circuit court against Waters to recover $6500, the purchase price, on the ground that the destruction of the improvements operated as a rescission of the contract. Waters answered and admitted that he was residing on the property at the time the house and other improvements were burned and stated that at the date of the execution of the contract he was a married man and at that time occupying the property as his homestead and was still occupying it as such at the time of the fire, that on the 5th day of September, 1913, all of the buildings on said lot were destroyed by fire without the fault of either party, that subsequent to the fire and before the 20th day of September, 1913, he executed a warranty deed to Hanley to said property and that his wife joined in the execution of said deed.

On motion of Waters the cause was transferred to chancery court and was tried there by the chancellor on an agreed statement of the facts substantially as stated above and, therefore, not necessary to be repeated here.

The chancellor found the issues in favor of the plaintiff Hanley and the defendant Waters appealed.

Counsel for the defendant argue for a reversal of the decree upon the ground that where a contract is made for the future conveyance of land and the buildings situated thereon with no provision as to the contingency of buildings being destroyed by fire before the time appointed for the conveyance, the loss by such fire falls wholly upon the vendee.

On the other hand, it is contended by counsel for plaintiff that in such case the loss falls upon the vendor. Many authorities are cited by them in support of their respective contentions. It must be admitted that the authorities are in irreconcilable conflict on this question but, under the facts in this case, we do not deem it necessary to spend any time upon the numerous decisions in England and in this country upon the question.

The facts are undisputed and show that the property in question was the homestead of Waters and that his wife was living at the time of the execution of the contract and that Waters resided upon the property at the time the contract was made and at the time the fire occurred.

Those cases which hold, as well as the text writers who adopt the rule, that where buildings are destroyed by fire occurring between the date of the contract and the conveyance, the loss falls upon the vendee, do so in the application of the maxim that equity regards that as done which ought to be done. Therefore, they say, in following this rule of equity, as soon as the contract is finally concluded, even though it is wholly executory in form, there results by its conveyance an equitable conversion of the land and the purchase money and the purchaser then becomes the equitable owner of the land; and this being so, they say, the conclusion can hardly be escaped that the loss must fall on the vendee. Pomeroy's Equit. Jurisprudence, Vol. VI., Sec. 859; *Id.* Vol. IV., Sec. 1406; *Id.* Vol. I., Secs. 368-372. See also *Sewell* v. *Underhill,* 27 L. R. A. (N. S.) 233; and *Hawkes* v. *Kehoe et al.,* 193 Mass. 419, 9 Amer. and Eng. Ann. Cases 1053.

Section 3901 of Kirby's Digest provides: "No conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same."

Under this statute we have always held that a deed purporting to convey the homestead of a married man is a nullity if his wife fails to join in the execution of the deed. *Pipkin* v. *Williams,* 57 Ark. 242; *Stephens* v. *Stephens,* 108 Ark. 53.

It is clear that if the husband cannot make a conveyance of the homestead without the concurrence of his wife, he cannot make a contract to convey the homestead which will be obligatory upon his wife. If he could make a contract to convey the homestead which would be obligatory upon his wife the statute could be easily evaded and would be of no force. *Yost* v. *Devault,* 9 Iowa 60. See also *Lott* v. *Lott,* (Mich.) 8 L. R. A. (N. S.) 748, where it was held that a quitclaim deed by a married woman of her interest in the homestead in connection with her husband's contract to convey could not be held to constitute a land contract enforceable in equity. Under the facts of this case, the husband did not have the ability to carry out the contract made by himself for the conveyance of his homestead, and the equitable title never vested in his vendee. It does not help the case any that the wife after the fire joined with the husband in the execution of a deed. This was her voluntary act, and was not done in compliance with the requirements of the contract. The contract of the vendor could not have been specifically enforced in equity, and the vendee never held the equitable title. Consequently the rule contended for by counsel for the defendant does not obtain, and the decree will be affirmed.