STURGIS *v.* MEADORS.

5-355                               266 S. W. 2d 81

Opinion delivered March 22, 1954.

[Rehearing denied April 19, 1954.]

*James R. Hale,* for appellant.

*Jameson & Jameson,* for appellees.

WARD, J.  Appellees obtained a judgment, by a jury trial in the circuit court, against appellant for $1,000, based on the general allegation that appellant had given them a check for $1,000 as earnest money for the pur- chase of a farm and that later payment was stopped on the check.  The principal issue involved is whether ap- pellees can maintain such action even though they could not have maintained an action for specific performance of the contract because of the statute of fraud.

On September 25, 1952, appellant went with a real estate agent named Van Tries to look at appellees' 229- acre farm with the view to buying the same.  Part of the farm was the homestead of appellees, C. F. Meadors and his wife, Myrtle Meadors.  After looking the farm over it was verbally agreed between appellant and the appel- lees that appellees would sell and that appellant would

buy the farm for the price of $26,000, and that appellant would put up $1,000 to the agent, it being understood that if appellant bought the farm the $1,000 would apply on the purchase price and that if he refused it would belong to appellees. Following this verbal agreement a memorandum contract was entered into on a regular form furnished by the agent containing the terms mentioned above but in which the land was not accurately described. This contract was signed by appellant and C. F. Meadors, but Mrs. Meadors did not sign. Within two or three days after the contract was entered into appellant, according to appellees' testimony, stopped payment on the $1,000 check. Also within a short time after the contract was signed appellant bought another farm for $36,000.

The original complaint filed by appellees on November 12, 1952, was based on the written contract referred to above, but after a motion was filed by appellant the complaint was amended to allege the oral agreement. Attached to the amended complaint was the deed executed by appellees conveying the land to appellant, showing that as to part of the lands appellees owned only a one-half interest in the mineral rights and also showing that some of the land was described indefinitely. Appellant filed a demurrer to the amended complaint and it was overruled by the court. The court also overruled a motion for an instructed verdict made by appellant at the close of appellees' testimony and the same motion made at the close of all the testimony.

In his brief appellant makes no argument based on the court's instructions but relies for a reversal here on two principal grounds: 1. The court erred in failing to sustain the defendant's demurrer to the complaint, because the alleged contract was void and unforceable for any purpose, and; 2. The court erred in failing to direct a verdict.

1. It is true that appellant would have been precluded from an action to force appellees to sell him the farm under the oral contract because of the statute of

fraud, but this same statute is not a bar to appellees' action to recover the $1,000 which appellant paid to appellees, or rather to their agent, as part of the purchase price for their farm. Authority for this conclusion is not readily established by the decisions of this court. However, the underlying principal was announced in the case of *Venable* v. *Brown,* 31 Ark. 564, and it has not been abrogated by any later decision. In that case the person who was attempting to buy the land delivered to the seller a mule of the value of $125, and the buyer brought an action to recover the mule when the sale fell through. The trial court allowed the plaintiff to recover the mule upon the finding of fact that the parties had not entered into a contract for the sale of the land but that the dealings amounted only to negotiations for a contract. This court affirmed the trial court on the same theory but said in effect that the decision would have been otherwise if it had been a contract of sale. In this case the court said:

"For the current of authorities sustains the proposition that where a person has paid money, or delivered property, upon a parol contract for the purchase of land, which is void by the Statute of Frauds, he cannot maintain an action to recover back the money or property so paid, or delivered, so long as the other party, to whom the money has been paid or property delivered, is willing to perform on his part, and has the ability to perform."

Other jurisdictions have passed upon substantially the same issue which we are considering here and have sustained the conclusion reached by us. In the case of *Keystone Hardware Corporation* v. *Patrick Tague,* 246 N. Y. 79, 158 N. E. 27, 53 A. L. R. 610, the vendee sued the vendor to recover earnest money which had been paid as part of the purchase price of land under an oral contract. The court said that although the statute of fraud would preclude an action for specific performance yet the vendee could not recover the money which had been given in part payment, using this language:

"It is not defendant who pleads the statute of frauds. He is satisfied with the contract. The fact that it was incomplete in the sense that something was left

for future negotiation does not concern plaintiff as far as his alleged cause of action is concerned. The agreement was not illegal. There was no objection in law to complete performance by both parties. Money paid in performance in part even of an oral contract for the purchase of land cannot be recovered if the vendor is willing to convey on the performance of the conditions by plaintiff. . . . If a jury should accept defendant's evidence, a necessary conclusion would follow that plaintiff is attempting, by its plea of the statute of frauds, to take advantage of its own wrong. No court will tolerate such a thing.''

An annotation in 169 American Law Reports 187, discussing this same issue, says this at page 188:

''According to the great weight of authority, the vendee in a contract which does not satisfy the requirements of the statute of frauds cannot recover payments made by him pursuant to the contract so long as the vendor is both willing and able to perform his part of the agreement, even though it would not be possible to enforce the contract against the vendor either at law or in equity.''

At page 192 in the same annotation we find this:

''Courts both in jurisdictions where the statute of frauds prevents maintenance of an action and those where the statute provides that the contract is void or invalid, have adhered to the concept that the vendor is the party for whose protection the statute is designed, and that, if he elects not to avail himself of its protection, the contract may be enforced against him, and, inversely, the vendee should not be permitted to take advantage of the statute.''

The conclusion which we reach is in no way contradictory to the holding in such cases as *Bowden* v. *Wilson*, 214 Ark. 828, 218 S. W. 2d 374, where this court refused to enforce a contract for the sale of land where the wife had not signed the contract and where the land being sold was her homestead. The court did say in the *Bowden*

case, *supra,* that the contract, being under the provisions of Ark. Stats., § 50-415, was unenforceable for any purpose, but it did not say, and we have never said, that money paid by the vendee under such a contract could be recovered. Here, appellees are not attempting to enforce performance of a contract.

2. The trial court's refusal to direct a verdict in favor of appellant was not error. The reasons assigned by appellant for a directed verdict have already been disposed of and need not be repeated, except that it is contended the undisputed proof showed appellees were unable to furnish a marketable title. We do not agree with this contention because, under the facts and circumstances of this case, this was a question for the jury. The jury answered the question in favor of appellees under the court's first instruction which covered this issue. The only remaining question is whether there was substantial evidence to support the jury's verdict on this point. We think there was such evidence. The fact that, at the time of the trial, the evidence showed part of appellees' land was not definitely described and they did not have record title to all the mineral rights in part of the land, must be weighed against other facts and circumstances revealed by the record. Appellant looked over the land and therefore knew what he was buying. Appellant stopped payment on the check before appellees had time to perfect their title and thereby rendered further efforts useless on appellees' part. Appellees were entitled to a reasonable time to perfect their title. In dealing with a similar situation in *Mays* v. *Blair,* 120 Ark. 69, 179 S. W. 331, we said:

"If the other defects in regard to the description in the other deeds had been insisted upon, appellant would have been in the attitude to demand that those defects be cured, but instead of doing that, he arbitrarily broke off the negotiations and declined to go further with the trade. Appellees still had the right, and have now the right, under the contract, to perfect the title so as to make it marketable."

The matter of certain misrepresentations alleged to have been made by appellees relative to grazing rights on

other lands was raised, but this was also submitted to the jury by instructions which are not challenged by appellant.

No error appearing, the judgment of the lower court is affirmed.

Justices McFADDIN and GEORGE ROSE SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. I think this case readily distinguishable from the authorities cited in the majority opinion. In those cases the vendee had actually made a payment of earnest money under an oral contract for the purchase of land. Later on the vendee sought to withdraw from the contract and as *plaintiff* brought suit to recover his payment. It being shown that the vendor was able and willing to carry out the agreement, the court in each case refused to allow the vendee to rely upon the statute of frauds as an offensive weapon enabling him to recover his down payment.

Those cases would be in point here if the appellees had cashed the vendee's check and had its proceeds in their possession. But that is not the situation. Payment of the check was stopped before it was cashed. Even though the check is negotiable it is of course subject to defenses as between the original parties to the instrument. Hence, in this case, the fact that the vendee's promise is evidenced by an uncashed check rather than by the invalid agreement itself adds no strength to the vendor's position. Narrowed down to its essentials, this is an attempt by the vendor to enforce a single clause—the promise to pay earnest money—contained in an invalid contract for the sale of land. The vendee relies, not offensively but defensively, upon the statute of frauds, as he has a perfect right to do. Thus the cases cited by the majority are in fact authorities favoring the appellant, since their holding is that the statute of frauds is a shield, not a sword. Here the vendees seek to use the invalid contract as an offensive weapon to enforce a promise for the payment of earnest money. If this can be done, there is no reason why they might not have recovered the entire purchase

price as well. In my opinion the judgment should be reversed and the cause dismissed.

Justice McFADDIN joins in this dissent.